UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PAULA S. L.,<br><br>                      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                      Defendant. | Case No. 23-10969<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
(ECF NOS. 7, 10)**

**A.**

Appealing a final decision of defendant Commissioner of Social Security (Commissioner), Plaintiff Paula S. L. claims that she applied for retirement benefits too early after relying on misinformation provided by a representative of the Social Security Administration (SSA) when plaintiff applied for benefits. ECF No. 1. She says that, before applying for retirement benefits at age 62, she asked the SSA representative whether she would receive a higher monthly benefit if she deferred her application until she was 66 years old. ECF No. 7, PageID.316. Plaintiff claims that

she told the SSA representative that her husband was deferring collecting his benefits until he turned 70 years old. *Id.* She wanted to ensure that she did not forgo her right to collect spousal benefits—an amount that equaled half of her husband's benefits. ECF No. 4-1, PageID.134-135. Plaintiff's goal in questioning the SSA representative was to "'maximize' the benefits legally available to her." ECF No. 7, PageID.317.

Plaintiff said that the SSA representative denied that she would forfeit her right to spousal benefits by applying for early retirement benefits. *Id.* The representative allegedly said that plaintiff was entitled to a "special perk" allowing her to collect early retirement benefits and then transition to the higher-paying spousal benefits when her husband started collecting retirement benefits. ECF No. 4-1, PageID.134. But plaintiff later learned that there was no special perk and that she had forfeited her spousal benefits. *Id.*, PageID.134-135, 158. She stated that her monthly benefits would have been more than $600 higher had she waited until age 66 to begin collecting benefits. *Id.* Plaintiff thus requested that the SSA deem her filing date at her full retirement age of 66, claiming that she is eligible for relief under the misinformation provision of 42 U.S.C. § 402(j)(5) and its related regulations. *Id.*, PageID.110.

An administrative law judge (ALJ) rejected plaintiff's request for relief, reasoning in part that § 402(j)(5) does not apply to a claim that a claimant filed for retirement benefits too early. ECF No. 4-1, PageID.114. The Appeals Council upheld the ALJ's decision. *Id.*, PageID.99. After that final decision from the Commissioner, plaintiff appealed here. ECF No. 1.

Both parties consented to this Court conducting all proceedings under 28 U.S.C. § 636(c) and then moved for summary judgment. ECF No. 6; ECF No. 7; ECF No. 10. The Court finds that the misinformation provision and related regulations provide no relief for plaintiff and thus will grant the Commissioner's motion for summary judgment.

**B.**

Under 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (cleaned up).

Here, substantial evidence supports the ALJ's finding that § 402(j)(5) does not apply to plaintiff's claim. "In all cases of statutory construction, the starting point is the language employed by Congress. Moreover, where the

3

statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Chapman v. Higbee Co.*, 319 F.3d 825, 829 (6th Cir. 2003). Section 402(j)(5) provides relief to "an individual [who] *failed* as of any date to apply for monthly insurance benefits under this subchapter by reason of misinformation provided to such individual by" an SSA representative. 42 U.S.C. § 402(j)(5) (emphasis added).

Thus, "[a] party is entitled to relief if he can demonstrate that he applied for benefits *later than* he would have because the agency employee or the agency itself misinformed him." *Wright v. Comm'r of Soc. Sec.*, No. 5:19CV572, 2020 WL 1231693, at *3 (N.D. Ohio Mar. 13, 2020), *aff'd*, No. 20-3352, 2020 WL 5758684 (6th Cir. Sept. 16, 2020) (emphasis added); *see also Long v. Shalala*, 21 F.3d 206, 208 (8th Cir. 1994) (stating that § 402(j)(5) "allows an applicant who relied on misinformation from an SSA employee in failing to file an earlier application for benefits to receive benefits retroactive to the date the misinformation was provided or the date the applicant qualified for benefits, whichever was later").

The applicable regulations also describe the misinformation provision as applying when an applicant failed to file earlier because of misinformation. "It is possible that in responding to your inquiry, we may have given you misinformation about your eligibility for such

4

benefits…which caused you not to file an application at that time. If this happened, and later an application for such benefits is filed with us, we may establish an earlier filing date under this section." 20 C.F.R. § 404.633(a).

Plaintiff does not claim that she failed to file for retirement benefits earlier because of misinformation; she asserts that she filed for benefits too early. *See* ECF No. 7, PageID.319 ("Had Plaintiff been provided with the option to delay taking her retirement benefits to full retirement age and file on her husband's record, Plaintiff would have waited until attaining the age of 66, to begin collecting benefits in a larger amount than she currently receives."). But Plaintiff's complaint that she filed for her retirement benefits too early is incongruous with the plain language of §§ 402(j)(5) and 404.633(a).

Plaintiff cites no precedent for an award of relief under §§ 402(j)(5) and 404.633(a) when an applicant filed for retirement benefits too early to get the maximum benefits. She cites *Costello v. Astrue*, but that decision is distinguishable. 499 F.3d 648 (7th Cir. 2007), *opinion modified on reh'g*, 254 F. App'x 541 (7th Cir. 2007). On the advice of an SSA representative, the *Costello* plaintiff applied for the spousal benefits of her second ex-husband (to whom she was married for six years) rather than those of her

5

first ex-husband (to whom she was married for 20 years). *Id.* at 649-50. Years after the *Costello* plaintiff began receiving spousal benefits, the SSA determined that she was ineligible for her second ex-husband's spousal benefits because she was married to him for less than ten years. *Id.* The question before the court in *Costello* was whether the plaintiff failed to apply for the spousal benefits of her first ex-husband because of misinformation. "[I]f Costello failed to apply for Social Security benefits because she received misinformation, then the agency must *backdate any subsequent application* to the time when it would have been made, had the information been correct." *Id.* at 650 (emphasis added).

As described in *Costello*, backdating the application for benefits is the remedy for misinformation under § 402(j)(5). *Id.*; *Bang ex rel. SAB v. Colvin*, No. 12-CV-629-WMC, 2015 WL 248881, at *3 (W.D. Wis. Jan. 20, 2015) ("The Act specifically provides that the Commissioner may backdate an application for benefits if an applicant is misinformed by an SSA employee about his eligibility to receive benefits."); *Lundberg v. Colvin*, No. CV-13-02465-TUC-RCC, 2015 WL 736337, at *4 (D. Ariz. Feb. 20, 2015), *aff'd*, 672 F. App'x 755 (9th Cir. 2017) ("The only exception to this rule concerns circumstances where no application is filed because an applicant is misinformed by agency employees about her eligibility to receive

benefits; in such cases the agency may backdate an application for benefits."). Rather than asking the SSA to backdate her application filing date, plaintiff asks to have her filing date postdated. The Court finds no precedent for postdating an application as a remedy under § 402(j)(5).

Plaintiff points to the *Program Operations Manual System* (POMS) GN 00204.008(G)(5),[1] which addresses misinformation in "[D]ual entitlement situations." ECF No. 7, PageID.327. "Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive." *Davis v. Sec'y of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). More specifically, the POMS is persuasive for explaining "the meaning of Social Security Act terms as well as the meaning intended by terms appearing within the regulations." *Id.* Under GN 00204.008(G)(5), SSA employees must establish "diaries for the optimum month for which higher benefits are due and to inform claimants of the optimum month" for a claimant with dual entitlement.

> Failure to establish appropriate diaries or take action on maturing diaries is only an indication of misinformation. It is not

---

[1] This section can be found at https://secure.ssa.gov/poms.nsf/lnx/0200204008 (last visited on July 11, 2024).

7

> the mishandling of the diary but the failure to inform claimants of the optimum month (i.e., the correct month in which to file for higher benefits) that represents incomplete information. Whenever this inaction results in a loss of benefits, the FO or the Workload Support Unit (WSU) where the alleged misinformation was given should initiate development and make misinformation determinations following the guidelines in GN 00204.008J.

POMS GN 00204.008(G)(5).

Plaintiff alleges that the SSA representative gave her misinformation in a dual entitlement situation in violation of GN 00204.008(G)(5). But the representative's violation of the internal policy set forth in the POMS "does not have the force and effect of law." *Davis*, 867 F.2d at 340. And while the POMS may be persuasive for interpreting Social Security law and regulations, "to the extent that the POMS conflicts with the statute and regulation at issue, it should not be followed." *Wilson v. Apfel*, 81 F. Supp. 2d 649, 653 (W.D. Va. 2000). The relevant statute and regulations here apply only to claimants who failed to apply because of misinformation.

What is more, another provision of the POMS shows why plaintiff's request to have her application postdated is distinguishable from the backdating remedy allowed under § 402(j)(5). Under GN 00204.039[2] of the POMS, which explains "the Month of Election (MOEL) Options," SSA

---

[2] https://secure.ssa.gov/poms.nsf/lnx/0200204039#c4 (last visited on July 11, 2024).

8

representatives should not discuss which month a claimant should elect to begin collecting benefits because of the many unknowns.

> Prior to November 2008, we used the breakeven point comparison to inform the claimant about the total benefits and the time it would take to recover the benefits from an earlier to a later MOEL. However, we discontinued this practice because the computation did not consider the changes in life expectancy, mortality rates, and the personal factors that the claimant should evaluate when making benefit decisions. Technicians should no longer discuss this option with claimants. However, when directing claimants to publications or website information, make sure to inform them about specific resources such as the Life Expectancy calculator and SSA mortality reports which may affect the claimant's decisions.

As explained on a U.S. News and World Report website, "Your break-even age is the point when drawing your payments later begins to exceed the value of starting payments early."[3]

Assuming plaintiff has collected $3,200 per month in retirement benefits,[4] she received about $172,800 in the four years before she was eligible for spousal benefits. Though plaintiff's monthly benefits would have been higher had she waited to collect spousal benefits, whether her *total benefits* over her lifetime would have been higher had she waited depends

---

[3] https://money.usnews.com/money/retirement/social-security/articles/how-to-calculate-your-social-security-break-even-age (last visited on July 11, 2024).

[4] This assumption stems from plaintiff's claim that would have been eligible for $3,800 in spousal benefits and that her retirement benefits have been $600 less than that amount. ECF No. 7, PageID.327.

9

on the variables described in GN 00204.039. Plaintiff's total benefits would be higher had she waited to apply only if she lives beyond her breakeven age, which is unknown. And the amount of total benefits plaintiff lost if she lives beyond her breakeven age is unascertainable.

In contrast, a claimant who failed to file because of misinformation will have unquestionably had a loss in total benefits if the SSA did not backdate the application. And the SSA can calculate with precision the amount a claimant should collect with backdating an application by multiplying the monthly benefits by the number of months of missed benefits.

In sum, plaintiff's claim that she filed for retirement benefits too early is at odds with the plain language of §§ 402(j)(5) and 404.633(a) and the remedy allowed under those provisions, so the ALJ's decision is supported by substantial evidence.

## C.

The Court **DENIES** plaintiff's motion for summary judgment (ECF No. 7), **GRANTS** the Commissioner's motion for summary judgment (ECF No. 10), and **AFFIRMS** the ALJ's decision.

Dated: July 16, 2024

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

10

## **NOTICE TO PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this order, any party may file objections with the assigned district judge.  Fed. R. Civ. P. 72(a).  The district judge may sustain an objection only if the order is clearly erroneous or contrary to law.  28 U.S.C. § 636.  **"When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge."**  E.D. Mich. LR 72.2.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 16, 2024.

>                     s/Donald Peruski
>                     DONALD PERUSKI
>                     Case Manager